UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ANTHONY MCCLENDON,

        Plaintiff,                              Case No. 2:12-cv-230

v.                                                  Honorable R. Allan Edgar

PATRICIA CARUSO, et al.,

        Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Caruso, Sherry, Stieve, Pandya, McQuiggin, West, Melissa LaPlaunt, Merling, Eicher, McGeshick, Hooten, Boswell, Deary, Swift, Derry, Batho, Clark, Durant, Michael Brown, Robinson, Lacoursiere, Oja, Green, Anderson, Chris Brown, Prison Health Services, Michigan Department of Corrections, Hough, Beakham, Berry LaPlaunt, Burl, Therrian, Dragan, and

Corizon / American Services Group, Inc.  The Court will serve the complaint against Defendants Curtis, Osborn, Smith, Hall, Johnson and Lurson.

**Discussion**

    I.    <u>Factual allegations</u>

Plaintiff Anthony McClendon, a state prisoner currently confined in the Ionia Maximum Correctional Facility (ICF), filed this civil rights action pursuant to 42 U.S.C. § 1983 against numerous prison officials.  Specifically, Plaintiff names Defendants MDOC Director Patricia L. Caruso, Jeri-Ann Sherry, Dr. Unknown Stieve, Dr. Haresh B. Pandya, Greg McQuiggin, Health Unit Manager Mark West, Nurse Melissa LaPlaunt, Nurse Theresa Merling, Nurse Dawn Eicher, Psychologist Corey McGeshick, Dr. P. Hooten, Psychologist Eidith Boswell, Psychologist Dike Deary, Resident Unit Manager Tara Swift, Assistant Resident Unit Supervisor Arthur Derry, Assistant Resident Unit Supervisor Robert Batho, Assistant Resident Unit Supervisor Jeffery Clark, Hearing Investigator Dan Durant, Sergeant Michael Robinson, Lieutenant Steven Therrian, Sergeant Michael Brown, Sergeant Unknown Curtis, Prison Guard Stephen Lacoursiere, Prison Guard Scott Smith, Prison Guard Matthew Oja, Prison Guard Berry LaPlaunt, Prison Guard Jeff Green, Prison Guard Woody Anderson, Resident Unit Officer Unknown Hall, Resident Unit Officer Unknown Osborn, Resident Unit Officer Chris Brown, Resident Unit Officer Unknown Johnson, Resident Unit Officer Unknown Larson, Prison Health Services (PHS), the Michigan Department of Corrections (MDOC), Resident Unit Manager Lawrence J. Hough, Unknown Beakhem, Sergeant Unknown Burl, Prison Guard Unknown Dragan, and Corizon / American Services Group, Inc.

In his complaint, Plaintiff alleges that on July 17, 2009, while he was incarcerated at the Chippewa Correctional Facility (URF), he was placed on observation in segregation due to being

depressed as a result of being harassed by staff at URF. On that date, Plaintiff, a practicing Buddhist, began a religious fast in order to gain spiritual insight. Plaintiff states that fasting is a significant tenet of his religious beliefs. Defendants Melissa LaPlaunt and Merling contacted Defendant Stieve and informed him that Plaintiff was not eating. Defendant Stieve labeled Plaintiff's fast as a "hunger strike," despite the fact that Plaintiff explained that he was fine physically and mentally and was exercising his protected religious beliefs. Defendant Stieve directed Defendants Merling and Melissa LaPlaunt to get Plaintiff's vital signs and weight. Plaintiff refused to submit to having his weight and vital signs taken. Defendant McQuiggin was contacted regarding Plaintiff's fast, labeled the behavior as a "hunger strike," and ordered that Plaintiff be forced to submit to vital sign and weight checks through the use of force and chemical agents. Plaintiff asserts that Defendant Sherry approved and / or acquiesced to the use of force to obtain Plaintiff's vitals and weight. Plaintiff states that he had been labeled by medical personnel as "high risk" for chemical agents because they caused him to suffer from breathing problems, skin rashes, blurred vision, and burning skin.

On June 18, 2009, Plaintiff sought treatment for chest pains and dizziness. Defendant Eicher saw Plaintiff and asked him what he had been doing and he responded, "Push ups and pull ups." Plaintiff added that he hadn't eaten in two days because he was depressed. When Defendant Eicher said that Plaintiff's comment did not make sense, he asked her where she had gotten her degree in Psychiatry. Defendant Eicher then told Plaintiff to "get the fuck out." Plaintiff complained that Defendant Eicher had not provided him with any treatment and she asked if he understood what "get the fuck out" meant.

On December 17, 2009, Defendant Chris Brown ordered Plaintiff to empty his pockets and submit to a shakedown. During the shakedown, Defendant Chris Brown felt Plaintiff's

genitals "for self-gratification." Plaintiff protested and stated that he was going to write a grievance. Defendant Chris Brown told Plaintiff to "cry to his mother." Plaintiff told Defendant Chris Brown that he was going to call his mother and tell her exactly what Defendant Brown had done. Plaintiff alleges that following this incident, he was transferred to the Adrian Correctional Facility, and then to the Woodland Correctional Facility (WCC) for a psych evaluation. After about 6 months, Plaintiff was sent back to URF without his footlocker, legal papers and typewriter.

On February 1, 2010, Plaintiff told Defendant McGeshick that he was feeling depressed and was suffering from sleeplessness, loss of appetite, and suicidal thoughts, and that he was being mentally abused by staff and neglected by health care. Plaintiff told Defendant McGeshick that he needed to be sent back to a Residential Treatment Program and that he needs to be on medication for his bi-polar condition. Because there was no psychiatrist at URF at that time, Defendant McGeshick advised Plaintiff to refuse to return to the general population until staff tired of writing him misconduct tickets for disobeying a direct order. Plaintiff stated that he was close to being paroled and could not afford to get tickets. Plaintiff asked Defendant McGeshick to put in a referral to "crisis intervention" at WCC, but Defendant McGeshick stated that he could not do that. Plaintiff further states that Defendant McGeshick is required to report the criminal sexual conduct of Defendant Chris Brown, but that he failed to do so.

On February 5, 2010, Defendant Curtis interviewed Plaintiff on his grievance against Defendant Chris Brown for touching Plaintiff's genitals. Defendant Curtis stated that he believed Plaintiff was attempting to circumvent the disciplinary process by making a false accusation against Defendant Chris Brown. Defendant Curtis asked Plaintiff if Defendant Chris Brown had written any tickets on him. Plaintiff said "no." Defendant Curtis then told Plaintiff to give him a shakedown

because he wanted "some of this," and felt Plaintiff's genitals. Plaintiff told Defendant Curtis that he was going to file a grievance on him, and Defendant Curtis responded that Plaintiff should make sure and spell his name correctly.

On February 8, 2010, Defendant McGeshick told Plaintiff to attempt suicide. Plaintiff filed a grievance on Defendant McGeshick and on February 11, 2010, Defendant McGeshick placed Plaintiff on observation in segregation for 14 days. Plaintiff complained to Defendant West and attempted to talk to Defendant Hooten, to no avail. On February 19, 2010, Plaintiff told Defendant West that he was not on a hunger strike, but that it was a religious fast. Defendant West stated that he needed to take Plaintiff's blood pressure and weight. On March 10, 2010, Defendant Brown asked Plaintiff how his "lying ass" was, and Plaintiff asserted that his name was "McLendon-El." Defendant Brown stated "I'm going to show you how to jail. You won't have to go on no religious fast to go to the hole." Plaintiff asked Defendant Brown if he was threatening him, and Defendant Brown stated that he was making a promise. Plaintiff told Defendant Brown that he'd be better off leaving him alone.

On May 10, 2010, Defendant Osborn called Plaintiff a "nigger" and said that staff were going to write Plaintiff a new ticket every day. Defendant Osborn then told Plaintiff to write a grievance on him, and told him that he would not be getting felt up, but instead would be "fucked." Plaintiff asserts that Defendants Osborn, Smith and Hall were writing tickets on him almost every day. On May 11, 2010, Defendant Smith called Plaintiff a nigger and told him that he was being harassed because he had written too many grievances on staff. On May 25, 2010, Defendant Hall called Plaintiff a "nigger" and stated that he was going to teach Plaintiff a lesson because of his grievance writing, and that he could "get" Plaintiff as long as he was at URF.

On June 16, 2010, Plaintiff asked Defendant Boswell about her failure to send Plaintiff to a treatment program, stating that his confinement in observation for more than 72 hours was causing his psychological trauma. Defendant Boswell told Plaintiff that she did not owe him anything and that if Plaintiff would "fall in line," maybe she and "these white folks" would ease up on him. On June 24, 2010, another inmate, Clemons #232413, assaulted Plaintiff while Defendants Johnson and Lurson watched for approximately three minutes. Plaintiff asked Defendants Johnson and Lurson to get prisoner Clemons off of him, but they just called Plaintiff "nigger boy" and told him to shut up. Plaintiff was then taken to segregation. Plaintiff protested that he had not even thrown a punch and that the videotape would prove he was telling the truth. Plaintiff was told to be quiet.

A few days later, Plaintiff told Defendant Boswell that he had not fought back and asked if she would get Defendant McQuiggin to look at that videotape. After this visit, Plaintiff was told by staff that Defendant Boswell refused to come back and see Plaintiff. Defendant Durant looked at the tape, but still refused to release Plaintiff from segregation. Defendant West told Plaintiff that he had spoken to Plaintiff's mother and that she was worried about his health. Defendant West told Plaintiff that if he stopped fasting and chilled out for month in the general population, that Defendant McQuiggin had agreed to transfer Plaintiff to a prison closer to his family. Plaintiff told Defendant West that Defendant Boswell had already done her psych evaluation and the only thing stopping Plaintiff from going to court and beating the misconduct conviction was that it was over the time limits. Plaintiff talked to Defendant Durant several times about getting out of segregation, and Defendant Durant said he would "check into it." However, Defendant Durant never got back to Plaintiff. Plaintiff also told Defendants Derry and Batho that he was not supposed

to be in segregation because he had not been fighting, which could be verified by the videotape, and that he was over the time limit for going to court on the ticket. Defendants Derry and Batho told Plaintiff that he was "shit out of luck." Defendants Derry and Batho laughed at Plaintiff each time they made rounds, which caused Plaintiff to feel suicidal and try to hang himself.

On July 2, 2010, Plaintiff covered his cell window in an attempt to get Defendant Boswell to come speak with him. However, each time Plaintiff asked for Defendant Boswell, staff told him to be quiet and lie down. Plaintiff states that a prisoner a few cells down from him was gassed, which caused Plaintiff to suffer from burning skin, burning eyes, trouble breathing, and an intense fear of death. Staff subsequently came to Plaintiff's cell and told him that he had been released from segregation. A female guard told Plaintiff that he was being taken to level 4, round unit. Plaintiff responded that he was not a level 4 prisoner and that prisoner Clemons, the prisoner who had assaulted Plaintiff, was in round unit. Plaintiff then stated that he was feeling suicidal and Defendant Dragan wrote a ticket on him for disobeying a direct order (DDO). Plaintiff tried to hang himself. When Defendant Burl came to review the DDO ticket with Plaintiff, he told Plaintiff to chill out, that he was going to level II on Monday.

Plaintiff claims that Defendants violated his rights under the First and Eighth Amendments. Plaintiff seeks damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include

more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that Plaintiff names the Michigan Department of Corrections as a Defendant in this case. Plaintiff may not maintain a § 1983 action against the Michigan

Department of Corrections.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment.  *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000).  In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  Therefore, the Court dismisses the Michigan Department of Corrections.

   The court also notes that Defendants Caruso, Pandya, Hooten, Deary, Swift, Clark, Robinson, Lacoursiere, Oja, Green, Anderson, Prison Health Services, Hough, Beakham, Berry LaPlaunt, Therrian, and Corizon / American Services Group, Inc. have not even been mentioned in the body of the complaint.  Liability under Section 1983 must be based on more than merely the right to control employees.  *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*.  *Monell*, 436 U.S. at 691; *Polk*, 454 U.S.

at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D.

Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Caruso, Pandya, Hooten, Deary, Swift, Clark, Robinson, Lacoursiere, Oja, Green, Anderson, Prison Health Services, Hough, Beakham, Berry LaPlaunt, Therrian, and Corizon / American Services Group, Inc. were personally involved in the activity which forms the basis of his claim. There is no indication that Defendants Caruso, Pandya, Hooten, Deary, Swift, Clark, Robinson, Lacoursiere, Oja, Green, Anderson, Prison Health Services, Hough, Beakham, Berry LaPlaunt, Therrian, and Corizon / American Services Group, Inc. had any involvement in this action, as Plaintiff fails to mention them in the fact section of his complaint. Accordingly, the Court concludes that Plaintiff's claims against Defendants Caruso, Pandya, Hooten, Deary, Swift, Clark, Robinson, Lacoursiere, Oja, Green, Anderson, Prison Health Services, Hough, Beakham, Berry LaPlaunt, Therrian, and Corizon / American Services Group, Inc. are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendants Sherry, Stieve, McQuiggin, West, Melissa LaPlaunt, Merling, McGeshick, Boswell, Deary, Robinson, Burl, Dragan, Brown, and Scott Smith violated his right to practice his religion when they treated his religious fast as if it was a hunger strike and required Plaintiff to submit to a check of his vital signs. While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that

his belief is sincerely held, and (3) Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see also, Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, No. 95-2348,1997 WL 428903, at *2 (6th Cir. July 30, 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

While inmates retain First Amendment rights to the free exercise of religion, prison officials may impinge on these constitutional rights where their actions are "reasonably related to legitimate penological interests." *See Flagner*, 241 F.3d at 483 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess the official's actions by reference to the following factors:

1. does there exist a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;

2. are there alternative means of exercising the right that remain open to prison inmates;

3. the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and

4. whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests.

*Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-91).

Failure to satisfy the first factor renders the regulation or action infirm, without regard to the remaining three factors. *Flagner*, 241 F.3d at 484 (quoting *Turner*, 482 U.S. at 89-90) ("a regulation cannot be sustained where the logical connection between the regulation and the asserted goal is so remote as to render the policy arbitrary or irrational"). If the first factor is satisfied, the remaining three factors are considered and balanced together; however, they are "not necessarily

weighed evenly," but instead represent "guidelines" by which the court can assess whether the policy or action at issue is reasonably related to a legitimate penological interest. *Flagner*, 241 F.3d at 484 (citations omitted). It should further be noted that the *Turner* standard is "not a 'least restrictive alternative' test" requiring prison officials "to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint." Instead, the issue is simply whether the policy or action at issue is reasonably related to a legitimate penological interest. *Id.*

Plaintiff does not allege any facts showing that the requirement that he submit to having his vital signs checked infringed upon his sincerely held religious practice or belief. He therefore has not alleged how his First Amendment right to the free exercise of religion was impaired. Second, the prison officials have a clear legitimate penological interest in protecting a prisoner's health during a fast and / or hunger strike. There is a valid, rational connection between checking a prisoner's weight and vital signs and protecting his health. Consequently, the first *Turner* factor is satisfied. Accordingly, Plaintiff fails to state a claim that his First Amendment right to practice his religious beliefs was violated.

Plaintiff also asserts that the conduct of Defendants Sherry, Stieve, McQuiggin, West, Melissa LaPlaunt, Merling, McGeshick, Boswell, Deary, Robinson, Burl, Dragan, Brown, and Scott Smith violated his Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction

of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Plaintiff's allegations against Defendants Sherry, Stieve, McQuiggin, West, Melissa LaPlaunt, Merling, McGeshick, Boswell, Deary, Robinson, Burl, Dragan, Brown, and Scott Smith do not rise to the level of an Eighth Amendment violation.

Plaintiff also appears to be claiming that Defendants Curtis and Chris Brown violated his Eighth Amendment rights when they touched his genitals during a pat down search. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the

unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock

in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

The court concludes that the touching of Plaintiff's genitals during a pat down search does not rise to the level of an Eighth Amendment violation. Therefore, Plaintiff's Eighth Amendment claims against Defendants Curtis and Chris Brown are properly dismissed.

However, the court notes that Plaintiff's complaint appears to state Eighth Amendment failure to protect claims against Defendants Johnson and Lurson. Therefore, these claims may not be dismissed upon initial screening.

Plaintiff claims that Defendants Sherry, McQuiggin, West, Melissa LaPlaunt, Eicher, Derry, Durant, Curtis, Hall, Smith. Osborn, Johnson, and Lurson retaliated against him for his use of the grievance system and for engaging in a religious fast in violation of the First Amendment. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove

that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). Therefore, Plaintiff has met the first prong of the test set forth in *Thaddeus-X*.

However, the court notes that Plaintiff's claims against Defendants Sherry, McQuiggin, West, LaPlaunt, Eicher, Derry, and Durant do not meet the second and third prongs of the test set forth in *Thaddeus-X*. Plaintiff claims that Defendant Sherry authorized the use of force to obtain his vital signs while he was fasting and that Defendant McQuiggin labeled his religious fast a hunger strike. Plaintiff states that Defendants West and Melissa LaPlaunt insisted on obtaining Plaintiff's vital signs while he was fasting, and that Defendant Eicher told him to "get the fuck out" when he asked her where she got her license to practice psychiatry. Defendant Derry allegedly laughed at Plaintiff when he complained that he was not guilty of fighting and Defendant Durant viewed the videotape which showed that Plaintiff was not guilty of fighting but failed to have Plaintiff released from segregation. Because Plaintiff fails to allege facts showing that the conduct of Defendants Sherry, McQuiggin, West, LaPlaunt, Eicher, Derry, and Durant was motivated by a desire to retaliate against him and /or that their actions would deter a person of ordinary firmness from engaging in that conduct, his retaliation claims against them are properly dismissed.

However, the court notes that Plaintiff's complaint appears to state retaliation claims against Defendants Curtis, Osborn, Smith, Hall, Johnson and Lurson. Therefore, these claims may not be dismissed upon initial screening.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Caruso, Sherry, Stieve, Pandya, McQuiggin, West, Melissa LaPlaunt, Merling, Eicher, McGeshick, Hooten, Boswell, Deary, Swift, Derry, Batho, Clark, Durant, Michael Brown, Robinson, Lacoursiere, Oja, Green, Anderson, Chris Brown, Prison Health Services, Michigan Department of Corrections, Hough, Beakham, Berry LaPlaunt, Burl, Therrian, Dragan, and Corizon / American Services Group, Inc. will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Curtis, Osborn, Smith, Hall, Johnson and Lurson with regard to Plaintiff's retaliation claims and against Defendants Johnson and Lurson with regard to Plaintiff's Eighth Amendment claims.

An Order consistent with this Opinion will be entered.


Dated:     3/25/2013                      /s/ R. Allan Edgar
                                         R. Allan Edgar
                                         United States District Judge